UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

**FILED**
JUN 17 2016

| | |
|---|---|
| CELSO ESTRADA, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 3:15-CV-03011-RAL<br><br><br>OPINION AND ORDER GRANTING GOVERNMENT'S MOTION TO DISMISS |

Celso Estrada, Jr. filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, Civ. Doc. 1.[1] This Court screened the § 2255 motion and ordered the Government to answer. Civ. Doc. 7. Estrada's § 2255 motion made claims of ineffective assistance of counsel, so the Government sought an order directing Estrada's defense counsel to file an affidavit addressing factual matters raised in the § 2255 motion. Civ. Doc. 9. Estrada waived in writing the attorney-client privilege with his defense counsel, and defense counsel submitted an affidavit. Civ. Doc. 14. Thereafter, on April 20, 2016, the Government filed a Motion to Dismiss and accompanying Memorandum. Civ. Docs. 21, 22. Estrada did not respond to the Motion to Dismiss and his 21-day time for doing so under Civil Local Rule 7.1(B) passed several weeks ago. D.S.D. Civ. LR 7.1(B). For the reasons explained, the Government's motion to dismiss is granted.

**I.    Facts**

---

[1] Citations to documents in the CM/ECF system filed in the § 2255 case will be "Civ. Doc." followed by the document number from 15-CV-3011-RAL.

1

On November 16, 2013, Estrada stabbed Harold James Fuller, Jr. ("Harold") in the torso with a knife causing Harold to suffer a collapsed lung and internal organ damage in the area of his stomach. United States v. Estrada, 13-CR-30200-RAL, Doc. 36.[2] Estrada then used the knife to slash the arm of Harold's wife Tera Jade Fuller ("Tera") causing a severe laceration down to the bone and a small puncture to her torso. Cr. Doc. 36. Both Harold and Tera are "Indians" under federal law and Estrada's assaults occurred in Indian country. Cr. Doc. 36. Estrada was indicted for two counts of assault with a dangerous weapon and two counts of assault resulting in serious bodily injury. Estrada was appointed counsel, Jana M. Miner, who was and remains the Senior Litigator for the Federal Public Defender's Office for North and South Dakota. Cr. Doc. 9. Estrada initially pleaded not guilty. Cr. Doc. 21. Later, Estrada entered into a plea agreement, changed his plea to guilty on the two counts of assault with a dangerous weapon, and received a sentence of 46 months total with two years of supervised release. Cr. Docs. 52, 53.

Estrada's § 2255 motion asserts that Miner provided ineffective assistance of counsel in not investigating or pursuing a self-defense theory. Civ. Doc. 1. Specifically, Estrada in ground one alleges that Miner was ineffective "for failing to investigate and pursue a self-defense theory after movant had advised her that he had only defended himself and his wife" ostensibly from a couple motivated by racial animus and "for failing to call and/or investigate [Estrada's] wife" who ostensibly would have supported Estrada's self-defense theory. Civ. Doc. 1.

However, Estrada signed a Factual Basis Statement, Cr. Doc. 36, that directly refutes his assertion of self-defense. Estrada at his change of plea hearing testified under oath that the

---

[2] Citations to documents in the CM/ECF system filed in Estrada's criminal case hereafter will use "Cr. Doc." Followed by the document number from 13-CR-30200-RAL.

2

Factual Basis Statement was completely accurate. Cr. Doc. 56 at 16-17. That Factual Basis Statement stated in relevant part:

> On or about the 16th day of November, 2013, in Todd County, in Indian country, in the District of South Dakota, Celso Estrada, Jr., a non-Indian, did unlawfully assault Harold James Fuller, Jr., an Indian, with a dangerous weapon, that is, a knife, with intent to do bodily harm to Harold James Fuller, Jr., in violation of 18 U.S.C. §§ 1152 and 113(a)(3).
> On or about the 16th day of November, 2013, in Todd County, in Indian country, in the District of South Dakota, Celso Estrada, Jr., a non-Indian, did unlawfully assault Tera Jade Fuller, an Indian, with a dangerous weapon, that is, a knife, with intent to do bodily harm to Tera Jade Fuller, in violation of 18 U.S.C. §§ 1152 and 113(a)(3).
> On November 16, 2013, Tera Jade Fuller was at apartment # 31 at the Sinte Gleska University apartment complex, where the Defendant lives with his wife Destiny Swan, a/k/a Destiny Estrada. Estrada and Tera were drinking alcohol, socializing, and watching some sports events on television. They were all friends. At some point, a verbal and physical disagreement arose. Tera may have bitten Estrada. Tera called for her husband, Harold James Fuller, Jr., to come to the apartment and take her home. Around 3:00 a.m., Harold arrived and knocked at apartment # 31, and observed that Tera and Destiny were involved in a physical confrontation. The physical confrontation between Tera and Destiny spilled out into the hallway in front of Apartment # 31. Harold, who was not drinking alcohol, positioned himself between Tera and Destiny, in an effort to break them up or hold them apart. As Harold is positioned between Tera and Destiny, with his back to the doorway of apartment # 31, the Defendant comes in the hallway holding a knife and quickly stabs Harold in the torso, striking Harold from a rear position. Thereafter, the Defendant makes a slashing motion to Tera's torso and arm. The Defendant reversed his course of travel, puts the knife behind his back, and retreats into apartment # 31. Harold and Tera bled profusely in the hallway, and both ended up on the hallway floor until medical personnel arrive to help them.
> Harold suffered a collapsed lung, as well as damage to internal organs in his stomach region. Tera suffered a stab and slash to her arm, which also punctured her torso. Tera's arm was severely lacerated, with the slashing cutting down to the bone. Both Harold and Tera were hospitalized. The parties agree that both Harold and Tera suffered serious bodily injury.

Cr. Doc. 36. The Factual Basis Statement also contains a verification paragraph at its start verifying the truth of those facts and a final paragraph setting forth the facts that bring the case within federal criminal jurisdiction under 18 U.S.C. § 1153.

3

Estrada's stabbings of Harold and Tera were captured on a security camera video of the hallway outside of Estrada's apartment, showing Estrada stabbing Harold from behind as Harold was trying to separate Tera and Estrada's wife who were tussling. Estrada then slashed Tera's arm with the knife before putting the knife behind his back and retreating into his apartment.

Estrada has not contested the content of the Affidavit of Jana Miner, which directly addresses Estrada's contentions in his § 2255 motion. Miner attested as follows in paragraphs 8 through 16:[3]

> At the beginning of my representation, Estrada said that he did not remember what had happened because he was very intoxicated. His first conversation with the federal defender investigator was very emotional, with Estrada crying and wailing. His story moved from being blacked out to a recollection of stabbing the victims because he was being beaten up by Tera Fuller. He did mention defense of Destiny, but was more concerned about his injuries at the hand of Tera Fuller. He did not say he was attacked by Harold Fuller. He acknowledged his perception of what happened might be different from what was on the video because he was drunk. During a second visit, when he reviewed the video, Estrada said that the video must have been altered by the building management because he is not a tribal member and that his status as an outsider married to a tribal member had always been an issue and why he couldn't get work on the reservation. A second video, taken from a different angle, did not deter Estrada from his belief that the first and primary video had been edited.
> Estrada's version of what happened continued to evolve, although it still centered on Tera Fuller attacking him, thus justifying his response when Tera and Estrada's wife began to physically fight. At no time in the case did Estrada claim that he had been attacked by Harold Fuller until the presentence report draft was read to him. Estrada then claimed that "God helped me to remember" and went on to say that Harold Fuller came into the apartment, struck Estrada in the living room by the table, and that Estrada went down to the floor. Estrada said he then watched Harold Fuller and Tera Fuller drag his wife by her hair out the door. Estrada said he got up, grabbed a knife, and went out the door to ultimately stab [Harold] Fuller and Tera Fuller.
> The facts as recited by Estrada in his petition contain information not disclosed previously to counsel, specifically the statements attributed to Harold Fuller and Tera Fuller about him being of Mexican origin, racial slurs, and that his wife was called a "traitor to her race." That is all new information from Estrada.
> I declined to file objections to the presentence report based on Estrada's previously undisclosed recollections about Harold Fuller. I advised him that the

---

[3] The paragraph numbering is omitted from this block quote.

4

information was very different from what he had told me before, very different from the factual basis statement in the plea agreement, and that to offer it at that time risked the loss of acceptance of responsibility . . . .

In working through the self defense and defense of other arguments by Estrada, I talked to his wife several times on the phone and traveled to Mission, South Dakota on or about February 12, 2014, to meet with his wife at the scene of incident. There were several facts gleaned from the visit that were important to me: 1) there was a working land line phone very near the table and couch where Estrada claimed he had been first attacked by Tera Fuller and then again by Harold Fuller. If the attacks happened the way Estrada claimed, he could have called for the police more quickly than going into the kitchen to grab a knife; 2) that Estrada kept a baseball bat under a couch cushion, very close to where he claimed to have been attacked. Grabbing the bat and threatening its use was an option he ignored; 3) although it was a small apartment, under his version, he had to stand up, go to the kitchen, pass by where he says his wife was being assaulted by Tera Fuller, reach over several pans and items to grab a knife with a long blade and then turn to go out of the apartment. No mention was made by him of trying to physically separate Tera Fuller and his wife before going to get the knife. The video did not support his contention that Harold Fuller attacked him in the apartment. From the video, it appeared that Harold Fuller was trying to separate the two women, entered the apartment very briefly, and then brought the women into the hallway where he continued to separate them. Estrada came from the back, stabbed Fuller in the back and side three times, then slashed Tera Fuller's arm.

During the interview with Estrada's wife, she said that after coming back into the apartment, he wanted to leave so he would not be arrested but that she made him stay. She said he also stabbed himself and wanted her to say that Harold Fuller had stabbed him. She refused to lie for him. He also hid the knife and tried to wash off the blood, all acts observed by his wife. The physical set-up of the apartment did not lend support to Estrada's version of what happened. His wife's testimony had the case gone to trial would not have supported his version. I discussed with him that even if I did not call his wife as a witness, the government likely would have, that there was not a way to keep her from testifying to at least some of her observations, and that because she had made statements during the initial investigation, there may not have been a reasonable likelihood of claiming marital privilege to suppress some of the statements from being used against him.

There are two videos of what happened. Estrada was shown both videos, several times each. He refused to acknowledge that he stabbed Harold Fuller three times.

I spoke with Estrada's wife a number of times, specifically with an eye to whether her version supported a defense of another. From her description of the night, from the point where Tera Fuller and Estrada argued, to the end when Estrada asked her to lie about his stab wound, she was consistent. She did not say that either Tera or Harold Fuller called her "a traitor to her race" or otherwise describe Estrada in racial invective.

5

Civ. Doc. 14

Statements made by Estrada under oath at his change of plea hearing further refute his contention that Miner failed to investigate or pursue for Estrada a self-defense theory. When Estrada changed his plea to plead guilty, he testified as follows:

> THE COURT: Have you had enough time to talk with Ms. Miner about your case and about what you should do?
>
> THE DEFENDANT: Yes.
> THE COURT: All right. Are you satisfied with the work that Ms. Miner has done for you?
>
> THE DEFENDANT: Yes.

Cr. Doc. 56 at 4. Estrada later was advised that he would not have the right to withdraw his guilty plea and acknowledged: "Yes, once I – once I say guilty, it's guilty." Cr. Doc. 56 at 15. As mentioned above, Estrada acknowledged under oath the accuracy of the Factual Basis Statement. Cr. Doc. 56 at 17. He stated that he was pleading guilty to the two counts of assault with a dangerous weapon because he wanted to do so. Cr. Doc. 56 at 18. He pleaded guilty to the two counts then and acknowledged that the was pleading guilty because he was in fact guilty of those offenses. Cr. Doc. 56 at 20.

## II. Discussion

Estrada's ineffective assistance of counsel claims are governed by the test articulated in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). An ineffective assistance claim has two elements: Estrada must show both that his counsel's performance was constitutionally deficient and that he was prejudiced by this deficiency. Strickland, 466 U.S. at 687.

To demonstrate deficient performance, Estrada must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. This standard is "highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Estrada has the burden of demonstrating that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

To establish prejudice, Estrada must demonstrate a "reasonable probability" that, but for his attorney's deficient performance, the outcome of his trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Estrada, having pleaded guilty, further must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." United States v. Storey, 990 F.2d 1094, 1097 (8th Cir. 1993); see also Matthews v. United States, 114 F.3d 112, 114 (8th Cir. 1997). A petitioner like Estrada "is bound by his plea and resulting conviction unless he can show his attorney's ineffective assistance rendered his plea involuntary." United States v. Davis, 2000 WL 1521611 at *1 (8th Cir. Oct 16, 2000) (unpublished). Merely a "bare assertion that he would not have pled guilty is insufficient to allow for an intelligent assessment of the likelihood that [Estrada] would have pled guilty and is far too speculative to warrant § 2255 relief." United States v. Frausto, 754 F.3d 640, 644 (8th Cir. 2014).

Here the record demonstrates that Estrada received effective assistance of counsel, that his contention of self-defense and use of his wife as a defense witness were adequately investigated, and that Estrada voluntarily and knowingly (and wisely in light of the video

7

evidence of the assaults) pleaded guilty based under a plea agreement. Estrada requested an evidentiary hearing in his § 2255 motion, but subsequently has filed nothing to contest Miner's affidavit or the Government's motion to dismiss. A § 2255 motion may be dismissed without an evidentiary hearing when the movant's "allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact." Winters v. United States, 716 F.3d 1098, 1103 (8th Cir. 2013). Estrada's allegations in his § 2255 motion are contradicted by the record including by his own sworn testimony during his change of plea hearing, the videotape of the assaults, and the undisputed affidavit of counsel Miner. Consequently, Estrada's allegations in the § 2255 motion are inherently incredible. No evidentiary hearing is warranted here.

### III. Conclusion and Order

For the reasons explained above, it is hereby

ORDERED that the Government's motion to dismiss, Civ. Doc. 21, is granted. It is further

ORDERED that Estrada's § 2255 motion is denied. It is finally

ORDERED that no certificate of appealability issues because there is an absence of a colorable showing of the denial of a constitutional right to justify issuance of such a certificate under 28 U.S.C. § 2253.

DATED this 17th day of June, 2016.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE